# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NORTHEASTERN DIVISION

| | |
|---|---|
| RONALD DAVID TALLENT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 2:16-cv-00088 |
| v. ) | Chief Judge Crenshaw |
| ) | Magistrate Judge Brown |
| ) | |
| NANCY BERRYHILL,[1] ) | |
| Acting Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

To: The Honorable Waverly D. Crenshaw, Jr., Chief United States District Judge

## REPORT AND RECOMMENDATION

Pending before the court is Plaintiff's motion for judgment on the administrative record (Docket Entry No. 16), to which Defendant Commissioner of Social Security ("Commissioner") filed a response (Docket Entry No. 19). Upon consideration of the parties' filings and the transcript of the administrative record (Docket Entry No. 10),[2] and for the reasons given herein, the Magistrate Judge **RECOMMENDS** that Plaintiff's motion for judgment be **DENIED** and that the decision of the Commissioner be **AFFIRMED**.

## I. PROCEDURAL HISTORY

Plaintiff, Ronald David Tallent, filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act on June 27, 2013, alleging disability onset as of March 30, 2013, due to essential tremors, fibromyalgia, arthritis, depression and anxiety. (Tr. 52, 103, 116).

---

[1]Nancy Berryhill became acting Commissioner for the Social Security Administration on January 23, 2017, and is therefore substituted as Defendant. *See* Fed. R. Civ. P. 25(d).

[2]Referenced hereinafter by page number(s) following the abbreviation "Tr."

Plaintiff's claim was denied at the initial level on October 4, 2013, and on reconsideration on January 3, 2014. (Tr. 52, 114-16, 130-35, 139-41). Plaintiff subsequently requested *de novo* review of his case by an administrative law judge ("ALJ"). (Tr. 142). The ALJ heard the case on June 6, 2015, when Plaintiff appeared with counsel and gave testimony. (Tr. 68-95, 97-98). Testimony was also received by a vocational expert. (Tr. 95-101). At the conclusion of the hearing, the matter was taken under advisement until August 19, 2015, when the ALJ issued a written decision finding Plaintiff not disabled. (Tr. 49-62). That decision contains the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.

2. The claimant has not engaged in substantial gainful activity since March 30, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease, osteoarthritis, fibromyalgia, obesity, and depressive disorder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except frequent climbing ramps and stairs; occasional climbing ladders, ropes, and scaffolds; frequent balancing, stooping, kneeling, crouching, and crawling; ability to do one, two, and three step instructions; and changes introduced gradually and infrequently.

6. The claimant is capable of performing past relevant work as a delivery driver. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from March 30, 2013, through the date of this decision (20 CFR 404.1520(f)).

(Tr. 54, 55, 57, 60, 62).

On August 24, 2016, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-5), thereby rendering that decision the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

## II. REVIEW OF THE RECORD

The following summary of the medical record is taken from the ALJ's decision:

In terms of the claimant's alleged back problems, in December 2011, x-rays of the lumbar spine revealed mild degenerative disc disease (Exhibit 6F). In 2014, a magnetic resonance image ("MRI") of the cervical spine revealed a posterior central right disc protrusion, and a MRI of the lumbar spine only revealed degenerative disc changes at T-11-T 12 and degenerative disc and facet changes at L4-5 without evidence of a herniated disc. Although a musculoskeletal examination in 2015, revealed a decreased range of motion . . . in extension, flexion, and lateral rotation of the cervical spine, tenderness in the paralumbar and lumbar spine, a right positive straight leg raise, and restricted range of motion of the knees, it also revealed normal muscle strength in upper and lower extremities; and treating physicians have only recommended conservative treatments, and no surgeries have been recommended nor mobility assistive devices prescribed (Exhibits 11F, 13F, 16F).

Medical records also indicate a history of joint problems and fibromyalgia. In 2008, however, an evaluation indicated no significant abnormalities on exam or clear-cut history to suggest obvious pathology for pain in his extremities and balance difficulties, and an EMG/NCS revealed normal results with no evidence of myopathy or neuropathy. The claimant has had joint pain, but his treating physicians have only prescribed conservative treatments of pain medications and steroid injections. In 2015, the claimant reported that he felt better when he took Prednisone, and an examination revealed normal muscle sensation and normal strength in the upper and lower extremities. Despite the claimant's joint pain, rheumatologist Dr. Sivalingam Kanagasegar indicated no diffuse soft tissue tender points for fibromyalgia noted. Furthermore, no treating physician has prescribed any mobility assistive devices or recommended surgery (Exhibits lF, 8F, 12F, 16F, ).

Furthermore, an examination in 2015, in conjunction with Dr. Clayton's medical source statement, and in relation to his alleged impairments, only revealed tenderness

3

of the left knee, left hip, right shoulder, and neck region upon range of motion; low back pain to deep palpation with diminished range of motion. Otherwise, the physical examination was pleasant, and the claimant was in no distress (Exhibit 17F).

Medical records, however, do indicate that the claimant is obese with weight around 257 pounds, height of 5'8", and body mass index ("BMI") of 39.07 (Exhibit 6F). A BMI of 30 or above is considered obese. Therefore, in accordance with SSR 02-lp, the undersigned has considered the impact of obesity on function, including the claimant's ability to perform routine movement and necessary physical activity within a work environment. The undersigned finds that the claimant's obesity, combined with his severe impairments, does limit his exertional and nonexertional activities such that the claimant is limited to the residual functional capacity stated above.

As for the claimant's alleged mental impairment, the claimant has only received appropriate medications from his primary care physician. He has not received any formal mental health treatment (Exhibits 8F and 10F).

During a psychological consultative examination on September 16, 2013, B. Kathryn Galbraith, Ph.D. indicated at least an average range of intellectual functioning. He had a depressed mood and affect mood congruent. The claimant reported that he is able to prepare simple meals, wash dishes, vacuum, sweep, and do laundry. He has a driver's license and drives regularly. He also, however, stated that he does not manage his own medications or manage his own finances. He showed evidence of moderate impairment in short-term memory, but no evidence of impairment in his ability to sustain concentration and in his long-term memory and remote memory functioning. He showed evidence of a moderate impairment in social relating and in his ability to adapt to change. He appeared able to follow instructions, both written and spoken. Dr. Galbraith diagnosed depressive disorder and global assessment of functioning score of 55 to 60, indicating moderate to the cusp of moderate and mild symptoms (Exhibit 9F).

(Tr. 58-59).

## III. CONCLUSIONS OF LAW

### A. Standard of Review

Review of the Commissioner's disability decision is narrowly limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the right legal standards in reaching the decision. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir.

2014) (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)). "Substantial evidence requires 'more than a mere scintilla' but less than a preponderance; substantial evidence is such 'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)). In determining whether substantial evidence supports the Commissioner's findings, a court must examine the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013) (quoting *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984)). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387 (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). "This is so because there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton*, 246 F.3d at 773 (citations omitted). However, where an ALJ fails to follow agency rules and regulations, the decision lacks the support of substantial evidence, "even where the conclusion of the ALJ may be justified based upon the record." *Miller,* 811 F.3d at 833 (citation and internal quotation marks omitted).

### B. Administrative Proceedings

The claimant has the ultimate burden of establishing his entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically

5

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) ("[T]he claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). The Commissioner applies a five-step inquiry to determine whether an individual is disabled within the meaning of the Social Security Act, as described by the Sixth Circuit as follows:

> (1) a claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings; (2) a claimant who does not have a severe impairment will not be found to be disabled; (3) a finding of disability will be made without consideration of vocational factors if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four; (4) a claimant who can perform work that he has done in the past will not be found to be disabled; and (5) if a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

*Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (citing *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007)); 20 C.F.R. §§ 404.1520; 416.920. The claimant bears the burden through step four of proving the existence and severity of the limitations his impairments cause and the fact that he cannot perform past relevant work; however, at step five, "the burden shifts to the Commissioner to 'identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity . . . ." *Kepke v. Comm'r of Soc. Sec.*, 636

F. App'x 625, 628 (6th Cir. 2016) (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).

The Social Security Administration can carry its burden at the fifth step of the evaluation process by relying on the Medical-Vocational Guidelines, otherwise known as "the grids," but only if a nonexertional impairment does not significantly limit the claimant, and then only when the claimant's characteristics precisely match the characteristics of the applicable grid rule. *See Anderson v. Comm'r of Soc. Sec.*, 406 F. App'x 32, 35 (6th Cir. 2010); *Wright v. Massanari*, 321 F.3d 611, 615-16 (6th Cir. 2003). The grids otherwise only function as a guide to the disability determination. *Wright*, 321 F.3d at 615-16; *see also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990). Where the grids do not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, typically through vocational expert ("VE") testimony. *Anderson*, 406 F. App'x at 35; *see Wright*, 321 F.3d at 616 (citing SSR 83-12, 1983 WL 31253, *4 (Jan. 1, 1983)).

When determining a claimant's residual functional capacity ("RFC") at steps four and five, the Commissioner must consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B), (5)(B); *Glenn v. Comm'r of Soc. Sec.*, 763 F.3d 494, 499 (6th Cir. 2014) (citing 20 C.F.R. § 404.1545(e)).

### C. Claims of Error

**1. The ALJ failed to give appropriate weight to the opinion of Plaintiff's treating physician.**

Plaintiff argues that the ALJ did not give appropriate weight to the opinion of Plaintiff's treating physician, Dr. Thomas Clayton. (Docket Entry No. 17, at 16). Plaintiff asserts that Dr.

7

Clayton's medical opinion was contradicted only by a non-treating, non-examining doctor's report that predated MRIs of Plaintiff's back and neck and that the ALJ improperly gave great weight to the reviewing doctors' evaluation even though there was substantial treatment after these evaluations. *Id*. at 18. Plaintiff asserts that Dr. Clayton's opinion was sufficiently supported by medical findings and that the ALJ erred in rejecting his opinion. *Id*. 19. In response, Defendant contends that the ALJ considered Dr. Clayton's opinions and treatment throughout the record, but determined that his opinion was due little weight as the opinion was inconsistent with Plaintiff's daily activities and also inconsistent with the records from Dr. Clayton and another physician. (Docket Entry No. 19, at 4).

Social Security regulations address three classifications of medical sources: treating sources; examining but non-treating sources; and non-examining sources. 20 C.F.R. § 404.1527; 20 C.F.R. § 404.1502. A treating source has a history of medical treatment and an ongoing treatment relationship with the plaintiff consistent with accepted medical practice. *Id.* § 404.1502. An examining non-treating source has examined the plaintiff, but does not have an ongoing treatment relationship. *Id*. A non-examining source is a physician, psychologist, or other acceptable medical source who has not examined the plaintiff, but provides a medical or other opinion based upon medical and treatment records. *Id*. The opinion of an examining non-treating source is given greater weight than that from a non-examining source, and an opinion from a treating source is afforded greater weight than an examining non-treating source. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (citing 20 C.F.R. §§ 404.1502, 404.1527(c)(1), (2)). "[W]hen the physician is a specialist with respect to the medical condition at issue," the specialist's "opinion is given more

weight than that of a non-specialist." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing 20 C.F.R. § 404.1527([c])(5)).

Opinions provided by treating sources are owed controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The regulations provide that an ALJ must provide "good reasons" for discounting the weight of a treating source opinion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Dr. Clayton began treating Plaintiff on April 24, 2013, prescribing him medication for depression. (Tr. 432-33). Plaintiff reported that he had pain when he climbed ladders or stairs, but that he could "walk as long as he need[ed] to on level ground without much of a problem." (Tr. 432). In June 2013, Dr. Clayton noted that Plaintiff had a "minor tremor" for many years that was not any worse than it had been over the past several years and noted that Plaintiff was "feeling much better" on his anti-depressant medication. (Tr. 431). In July 2013, Dr. Clayton assessed Plaintiff with fibromyalgia, arthralgia, back pain with history of sciatica, anxiety, depression, and tremor that was probably familial. (Tr. 435). Plaintiff reported feeling more depressed. (Tr. 429, 435).

In October 2013, Plaintiff reported aches and pains with movement, and Dr. Clayton noted that Plaintiff's anti-depressant medication was somewhat helpful. (Tr. 445). In December 2013, Dr. Clayton assessed Plaintiff with back pain with buttocks and leg pain. (Tr. 444). Plaintiff's examination reflects that Plaintiff had "some mild tenderness of the left paralumbar region and SI joint," and had negative straight leg raise. *Id.* Dr. Clayton "spent quite some time talking [with Plaintiff] about diet, weight loss and increased activity levels," and also prescribed a different anti-depressant medication in addition to the one previously prescribed. (Tr. 444).

9

At Dr. Clayton's request, Plaintiff had an MRI on January 31, 2014. (Tr. 446). The MRI of the cervical spine showed that at the C5-6 level there was mild posterior central disc bulge and that the "facets, central canal, and neutral foramina" were normal. *Id.* The MRI also showed at the C5-6 level there was mild disc space narrowing and there was a posterior central right disc protrusion with slight indentation of the thecal sac and cervical cord. *Id.* The MRI of the lumbar spine revealed degenerative disc changes at T11-12 and degenerative disc and facet changes at L4-5 without evidence of a herniated disc. (Tr. 447). On November 20, 2104, Dr. Clayton noted that Voltaren, prescribed by Plaintiff's rheumatologist, was helping Plaintiff's arthritis and fibromyalgia. (Tr. 482).

On April 29, 2015, Plaintiff visited Dr. Clayton, complaining of back, hip, knee, right shoulder and right arm pain, and Plaintiff stated that he could not work because he could not sit or stand for long periods of time and his pain made it difficult to concentrate. (Tr. 479). A physical examination showed tenderness of the left knee and left hip, right shoulder, and neck region upon range of motion and deep palpation. *Id.* Plaintiff also had low back pain to palpation with diminished range of motion. *Id.* Otherwise, Dr. Clayton noted that Plaintiff's physical examination was "pleasant" and Plaintiff was not in distress. *Id.*

On April 29, 2015, Dr. Clayton completed a medical source statement and opined that Plaintiff could lift less than ten (10) pounds occasionally, less than ten (10) pounds frequently, stand and/or walk less than two (2) hours in an eight (8) hour workday, and sit with normal breaks less than one (1) hour in an eight (8) hour workday. (Tr. 452). Pushing and pulling was limited in the upper and lower extremities due to fibromyalgia with muscle tenderness, low back pain, right shoulder pain, left knee pain, neck pain on range of motion and left hip pain on range of motion.

(Tr. 453). Dr. Clayton opined that Plaintiff would need to alternate sitting and standing to relieve pain or discomfort due to these conditions, he would often experience pain severe enough to interfere with attention and concentration, and he was mentally incapable of even "low stress jobs." *Id*. As to whether Plaintiff would need to take unscheduled breaks during an eight (8) hour workday, Dr. Clayton answered, "can't work." *Id*. Dr. Clayton opined that Plaintiff's legs should be elevated with prolonged sitting and that his impairments would likely produce "all bad days," meaning Plaintiff "can't work." *Id*. Dr. Clayton further opined that Plaintiff should never climb, balance, kneel, crouch or crawl due to fibromyalgia and osteoarthritis; that his reaching in all directions was limited to occasionally due to pain in the right arm and shoulder; and that his speaking was limited because under stress he would stutter. (Tr. 454). Environmental restrictions included avoiding all exposure to humidity and wetness and avoiding concentrated exposure to extreme cold and heat, noise, dust, vibration, fumes, odors, dust, gases, perfumes, solvents/cleaners, soldering fluxes, cigarette smoke and chemicals. (Tr. 455).

> The ALJ determined that Dr. Clayton's opinion should be given little weight, stating:
>
> As for the opinion evidence, the undersigned has considered the opinion of treating physician Dr. Thomas Clayton (Exhibit 14F). The undersigned gives Dr. Clayton's opinion little weight. Dr. Clayton's opinion that the claimant is limited to sitting less than one hour per day and standing and walking less the two hours a day and inability to perform any postural activities is clearly inconsistent with the claimant's reported daily activities, and the findings of Dr. Clayton and Dr. Kanagasegar (Exhibits 7E, 9F, 16F, and 17F, and Hearing Testimony).

(Tr. 60).

Plaintiff argues that Dr. Clayton's medical opinion was contradicted only by a non-examining doctor's report that predated MRIs of Plaintiff's back and neck and that the ALJ improperly gave great weight to the reviewing doctor's evaluation even though there was substantial

11

treatment after these evaluations. (Docket Entry No. 17, at 18). However, the ALJ considered Plaintiff's MRIs of his back and neck, included in exhibit 17F cited above, in conjunction with the entire medical record. The ALJ specifically stated:

> In 2014, a magnetic resonance image ("MRI") of the cervical spine revealed a posterior central right disc protrusion, and a MRI of the lumbar spine only revealed degenerative disc changes at T-11-T 12 and degenerative disc and facet changes at L4-5 without evidence of a herniated disc. Although a musculoskeletal examination in 2015, revealed a decreased range of motion . . . in extension, flexion, and lateral rotation of the cervical spine, tenderness in the paralumbar and lumbar spine, a right positive straight leg raise, and restricted range of motion of the knees, it also revealed normal muscle strength in upper and lower extremities; and treating physicians have only recommended conservative treatments, and no surgeries have been recommended nor mobility assistive devices prescribed (Exhibits 11F, 13F, 16F).

(Tr. 58).

The ALJ further noted:

> [A]n examination in 2015, in conjunction with Dr. Clayton's medical source statement, and in relation to his alleged impairments, only revealed tenderness of the left knee, left hip, right shoulder, and neck region upon range of motion; low back pain to deep palpation with diminished range of motion. Otherwise, the physical examination was pleasant, and the claimant was in no distress (Exhibit 17F).

*Id*.

The ALJ also cited Plaintiff's inconsistent statements as to disability, noting that Plaintiff's testimony that he only rested three to four days a week was "inconsistent with the treating progress notes of treating physician Dr. Clayton and treating rheumatologist Dr. Kanagasegar as well as his reported daily activities of driving on a regular basis, shopping twice a week, and going into town." (Tr. 59-60). The ALJ noted:

> The claimant has also described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. At one point or another in the record (either in forms completed in connection with the application and appeal, in medical reports or records, or in the claimant's testimony), [t]he claimant is reportedly still able to perform personal care needs, perform some

12

household chores, drive, help his wife prepare meals, shop in stores twice a week, watch television, talk on phone with his son and daughter three to four times a week, go to town twice a week, and go out alone. He has also completed necessary SSA documents (Exhibit 7E and Hearing Testimony). Such activities are clearly not the activities of an individual with totally disabling physical or mental conditions. His ability to perform such a variety of daily activities tends to negate the credibility of his subjective complaints. Furthermore, one would not reasonably anticipate that a person who experiences the degree of symptoms alleged to be able to tolerate the mental and physical demands, the level of concentration, or the amount of social interaction, necessary to perform many of these activities.

(Tr. 59).

As to the ALJ's conclusion that Dr. Clayton's opinion was inconsistent with the findings of Dr. Kanagasegar, a specialist in rheumatology, the ALJ earlier noted that in February 2015, Dr. Kanagasegar found "no diffuse soft tissue tender points for fibromyalgia." (Tr. 58, 468). The ALJ also noted that in March 2015 Plaintiff reported to Dr. Kanagasegar that he felt better when he took Prednisone, and an examination revealed normal muscle sensation and normal strength in the upper and lower extremities. (Tr. 58, 464).

Further, the ALJ noted that "treating physicians have only recommended conservative treatments, and no surgeries have been recommended nor mobility assistive devices prescribed." (Tr. 58). *See Branon v. Comm'r of Soc. Sec.*, 539 F. App'x 675, 678 (6th Cir. Oct. 2, 2013) (stating that a "conservative treatment approach suggests the absence of a disabling condition").

Accordingly, the Magistrate Judge concludes that the ALJ properly considered Dr. Clayton's opinion along with the medical record as a whole, properly concluded that Dr. Clayton's opinion was not well supported and was inconsistent with other evidence in the record, and properly provided good reasons for giving Dr. Clayton's opinion little weight.

**2. The ALJ failed to give adequate reason for giving the reviewing physicians' opinions great weight.**

13

Plaintiff argues that the ALJ gave the reviewing physicians' opinions great weight, even though the opinions were given without the benefit of subsequent MRIs and that the ALJ did not cite to any evidence in the record that supported the State agency physicians' opinions. (Docket Entry No. 17, at 20). Defendant contends that the ALJ did not need to cite the evidence as a whole that was consistent with these opinions because the ALJ's decision already set forth the reasoning in the preceding paragraphs of the ALJ's decision.

The ALJ gave "great weight" to the opinions of the State agency medical consultants and found that they were consistent with the record as a whole. (Tr. 60). "'State agency medical and psychological consultants . . . are highly qualified physicians [and] psychologists . . . who are also experts in Social Security disability evaluation,' and whose findings and opinions the ALJ 'must consider . . . as opinion evidence.'" *Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 712 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527(e)(2)(i)). While all medical opinions are evaluated as discussed in 20 C.F.R. § 404.1527, opinions by consulting or non-treating doctors need not be evaluated in accordance with the treating physician rules outlined by the Sixth Circuit. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x at 730 (citing 20 C.F.R. § 404.1527 and *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994)).

The ALJ is not required to reiterate the prior paragraphs in support of each conclusion. *See Crum v. Comm'r of Soc. Sec.*, No. 15-3244, 2016 WL 4578357, at \*7 (6th Cir. Sept. 2, 2016) ("Elsewhere in her decision, the ALJ laid out in detail the treatment records that showed that Crum could return to normal work activity. . . . No doubt, the ALJ did not reproduce the list of these treatment records a second time when she explained why Dr. Bell's opinion was inconsistent with this record. But it suffices that she listed them elsewhere in her opinion.") (citing *Forrest v. Comm'r*

*of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014)). "[B]efore an ALJ accords significant weight to the opinion of a non-examining source who has not reviewed the entire record, the ALJ must give 'some indication' that he 'at least considered' that the source did not review the entire record. In other words, the record must give some indication that the ALJ subjected such an opinion to scrutiny." *Kepke*, 636 F. App'x at 632 (citing *Blakley*, 581 F.3d at 409). Thus, an ALJ errs where he adopts the findings of state agency physicians who have not examined the full record **and** the reviewing court cannot tell whether the ALJ considered the full record. *See Kepke,* 636 F. App'x at 632 ("Kepke misconstrues the Court's holding in *Blakley v. Commissioner of Social Security* as providing a blanket prohibition on an ALJ's adoption of a non-examining source opinion, where that source has not reviewed the entire record. 581 F.3d 399, 409 (6th Cir.2009). The Court's holding in *Blakley* is far more limited . . . .").

The ALJ provided a thorough summary of the medical records pre-dating and post-dating the State agency providers' opinions. The ALJ considered the 2014 MRIs and noted that they "only revealed degenerative disc changes at T-11-T 12 and degenerative disc and facet changes at L4-5 without evidence of a herniated disc." (Tr. 58). The ALJ noted that a 2015 musculoskeletal examination revealed normal muscle strength in upper and lower extremities. *Id.* The ALJ also noted that Plaintiff's treating physicians only recommended conservative treatments, and no surgeries were recommended nor mobility assistive devices prescribed. *Id.* The ALJ further noted that in 2015 Plaintiff reported that he felt better when he took Prednisone, and an examination revealed normal muscle sensation and normal strength in the upper and lower extremities. *Id.* Also, Dr. Kanagasegar found no diffuse soft tissue tender points for fibromyalgia. *Id*. Thus, the

Magistrate Judge concludes that the ALJ's reliance on the State agency examiners' opinions is supported by substantial evidence.

### 3. The ALJ erred in failing to find that tremors were a severe impairment.

Plaintiff argues that despite reports and testimony concerning tremors, the ALJ did not give any restrictions in his hypotheticals concerning tremors.

At step two of the sequential evaluation process, a plaintiff bears the burden of showing that a medically determinable impairment is severe and meets the twelve month durational requirement of the Act. *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803-04 (6th Cir. 2012). Symptoms alone cannot constitute a "medically determinable impairment." SSR 96-4p, 1996 WL 374187, at *2 (S.S.A. July 2, 1996); *see id.* at *1 ("No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment."). A "severe impairment" is "any impairment or combination of impairments which significantly limits [the plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).[3] In determining whether a plaintiff is disabled, the Commissioner considers all of the plaintiff's symptoms, including pain, and the extent to which the plaintiff's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529(a). If the plaintiff is not doing substantial gainful activity, the Commissioner considers the plaintiff's symptoms, such as pain, to evaluate

---

[3]Basic work activities are "the abilities and aptitudes necessary to do most jobs," such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; [c]apacities for seeing, hearing, and speaking; [u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting." 20 CFR § 404.1521(b) (2015).

whether the plaintiff has a severe physical or mental impairment(s), and at each of the remaining steps in the process. 20 C.F.R. § 404.1529(d).

Further, a diagnosis alone does not establish an impairment's severity. *Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 930 (6th Cir. 2007) ("The mere existence of . . . impairments . . . does not establish that [the plaintiff] was significantly limited from performing basic work activities for a continuous period of time."); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("[M]ere diagnosis of arthritis . . . says nothing about the severity of the condition."); *Asbury v. Comm'r of Soc. Sec.*, No. 14-CV-13339, 2016 WL 739658, at *3 (E.D. Mich. Feb. 25, 2016) ("[D]iagnoses themselves generally do not establish disability; rather, disability is determined by the functional impairments caused by the diagnosis or condition. . . . And a diagnosis of a condition, without more, does not speak to the severity of the condition or the functional limitations associated with it."). "'In considering whether a claimant has a severe impairment, an ALJ must not accept unsupported medical opinions or a claimant's subjective complaints.'" *Wilkins v. Comm'r of Soc. Sec.*, No. 13-12425, 2014 WL 2061156, at *13 (E.D. Mich. May 19, 2014) (citations omitted). "[I]t is [the plaintiff's] burden to prove the severity of her impairments." *Higgs*, 880 F.2d at 863 (citing *Murphy v. Sec'y of Health & Human Servs.*, 801 F.2d 182, 185 (6th Cir.1986)).

Finding that Plaintiff's tremors were not a severe impairment, the ALJ stated:

> The claimant has also alleged tremors; however, there is no objective support of limitations to support it. Even though an examination in June 2013 revealed mild fine tremors of the upper extremities, the claimant reported that his tremors were not any worse than it had been for the last several years. Furthermore, in 2008, an EMG/NCS test revealed normal results with no evidence of myopathy or neuropathy; and in 2014, an electroencephalogram ("EEG") revealed normal results.

(Tr. 54-55; 58, 271, 448).

The record reflects that in June 2013, Dr. Clayton noted that Plaintiff had a "mild tremor" for many years and that ut was "not really any worse than it has been over the last several years." (Tr. 431). In July 2013, Dr. Clayton noted that Plaintiff's physical examination showed that Plaintiff had "some minimal resting tremor of the upper extremities" and assessed that Plaintiff's tremor was probably familial. (Tr. 429, 435). No doctor opined that Plaintiff had specific limitations due to tremors. A lack of evidence in support of limitations supports the ALJ's findings. *See Seeley v. Comm'r of Soc. Sec.*, 600 F. App'x 387, 390 (6th Cir. 2015) ("When doctors' reports contain no information regarding physical limitations or the intensity, frequency, and duration of pain associated with a condition, this court has regularly found substantial evidence to support a finding of no severe impairment." (citation omitted)). The record reflects that the ALJ properly considered Plaintiff's tremors. Moreover, because Plaintiff's "impairment was not determined to be 'severe,' the ALJ was not required to reference it in [the ALJ's] hypothetical question to the vocational expert." *Griffith v. Comm'r of Soc. Sec.*, 582 F. App'x 555, 565-66 (6th Cir. 2014) (citing *Russell v. Barnhart*, 58 F. App'x 25, 30 (4th Cir.2003) ("Finally, the hypothetical question may omit non-severe impairments, but must include those that the ALJ finds to be severe.")); *Brady v. Soc. Sec. Admin.*, No. 3:14-CV-1977, 2017 WL 2376864, at *13 (M.D. Tenn. May 31, 2017).

Accordingly, this claim is without merit.

### IV. CONCLUSION AND RECOMMENDATION

For the reasons explained above, the Magistrate Judge **RECOMMENDS** that Plaintiff's motion for judgment on the administrative record (Docket Entry No. 16) be **DENIED**, and the Commissioner's decision be **AFFIRMED**. The parties have fourteen (14) days of being served with a copy of this R&R to serve and file written objections to the findings and recommendation

proposed herein. A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. *Thomas v. Arn*, 474 U.S. 140, 142, *reh'g denied*, 474 U.S. 111 (1986); *see Alspaugh v. McConnell*, 643 F.3d 162, 166 (6th Cir. 2011).

**ENTERED** this 6th day of December, 2017.

/s/   Joe  B.  Brown
JOE B. BROWN
United States Magistrate Judge